UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE AUSTIN AND KAYE AUSTIN,

        Plaintiffs,

vs.

EVANS & LUPTAK, P.L.C. and  MICHAEL J.
MEHR,

        Defendants.

Case No. 2:09-cv-14147

Hon. Victoria A. Roberts

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND

      Plaintiffs Wayne Austin and Kaye Austin, by and through their attorneys, The Googasian Firm, P.C., allege as follows in their First Amended Complaint against Defendants Evans & Luptak, P.L.C. and Michael J. Mehr:

### Nature of Action

      1.    This diversity action arises from the acts and omissions of a Michigan law firm and one of its attorneys , Defendants Evans & Luptak, P.L.C. and Michael J. Mehr, with regard to estate planning for a long-time client residing in California, Kenneth "Wing" Hodas, that caused the beneficiaries of Wing's estate, Plaintiffs Wayne and Kaye Austin, to lose millions of dollars following Wing's death in June 2008.

      2.    This action, originally filed in California Superior Court and removed to United States District Court for the Central District of California, was transferred to this judicial district over the objections of Plaintiffs.

### Parties

      3.    Plaintiffs Kaye and Wayne Austin ("the Austins") are citizens of California.

4.      Defendant Evans & Luptak, P.L.C. is a Michigan professional limited liability company that is headquartered and does business in this judicial district.

5.      Defendant Michael J. Mehr ("Mr. Mehr") is a citizen of Michigan, and a member of the State Bar of Michigan who practices law and maintains an office in this judicial district.

## Jurisdiction and Venue

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7.      Venue exists pursuant to 28 U.S.C. § 1391, according to the United States District Court for the Central District of California.

8.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

## Common Allegations

### Mr. Mehr and Evans & Luptak Serve As Counsel To Wing Hodas For Many Years, Including After His Move To California

9.      Evans & Luptak is, and, at all relevant times, was, a Michigan law firm

10.     Mr. Mehr is, and, at all relevant times, was a partner at Evans & Luptak.

11.     At all relevant times, Mr. Mehr was an actual or ostensible agent of Evans & Luptak.

12.     For many years, Evans & Luptak and Mr. Mehr have provided legal services to members of the Hodas family, including to Ernest and Shirley Hodas, and their three children, Robert Hodas, Kenneth "Wing" Hodas (hereafter, "Wing Hodas") , and Barbara "Bunny" Hodas.

13.     Evans & Luptak and Mr. Mehr also have provided legal services to Hodas-owned entities, including one or more limited liability companies or partnerships.

-2-

14.     The Hodas clients represented by Evans & Luptak and Mr. Mehr had many millions of dollars in assets, including Wing Hodas, whose personal estate was worth millions of dollars at the time of his death in June 2008.

15.     For many years prior to 2008, Evans & Luptak and Mr. Mehr had been involved in developing estate plans for many members of the Hodas family, including Wing Hodas,

16.     For many years prior to 2008, Wing Hodas had lived in northern California, where he owned property, including a house in which he resided.    More specifically, Wing Hodas had settled in Siskiyou County, a California county that borders Oregon.

17.     During the time in which Wing Hodas resided in California, Evans & Luptak and Mr. Mehr provided legal services to him.

18.     For example, while Wing Hodas was living in California prior to 2008, Evans & Luptak had created at least one will and trust for Wing Hodas.

19.     As another example, in approximately March 2007 in connection with legal services provided to Wing Hodas, Evans & Luptak researched what California law required with regard to one or more legal documents that it was preparing for Wing Hodas to sign.

20.     Through their representation of Wing Hodas, Evans & Luptak and Mr. Mehr were aware that the largest asset held by Wing Hodas through his trust was a 32-percent interest in a family partnership, Hodas Assoc., L.L.C, ("the Hodas LLC"), which Evans & Luptak and Mr. Mehr also represented.

21.     Upon information and belief, the Hodas LLC owns many millions of dollars worth of assets, including both stock and real estate.

22.     As of December 31, 2007, Wing Hodas's interest in the Hodas LLC was worth millions of dollars.

### Wing Hodas Leads A Solitary Life In Northern California, And Befriends The Austins

23.     Wing Hodas, who was born in 1948, led a free-spirited, independent lifestyle for many years prior to his death.

24.     Wing Hodas had been divorced and single for many years.

25.     Evans & Luptak and Mr. Mehr knew Wing Hodas to be a unique and entertaining person.

26.     Wing Hodas's only child, Rachel Hodas, who was born in 1976, did not live near her father or have much contact with him.

27.     Wing Hodas lived alone in Siskiyou County, California in a house he designed and built, and he largely led a life of independence there.

28.     For a number of years prior to his death in 2008, Wing Hodas had limited contact with his family.

29.     For example, prior to a visit by Rachel Hodas to see her father in the weeks immediately preceding his death on June 11, 2008, Wing Hodas had not seen his daughter for a number of years.

30.     In contrast, Wing Hodas spent a considerable amount of time with Wayne and Kaye Austin in years prior to his death.

31.    Wing Hodas had befriended the Austins in approximately 2006 after calling them at the suggestion of a mutual friend who knew that the Austins and Wing Hodas lived in relative proximity to each other.

32.    After becoming friends with the Austins in approximately 2006, Wing Hodas spoke to and spent time on multiple occasions each week with the Austins.

33.    After befriending the Austins, Wing Hodas considered Wayne Austin to be an informal teacher and a positive influence on his life.

34.    In the latter half of 2007, after years of a lymphoma condition having been in remission,  Wing Hodas learned that his cancer had returned.

35.    Wing Hodas turned to, and relied upon, the Austins on numerous occasions with regard to his medical condition.

36.    For example, Wing Hodas asked Wayne Austin to accompany him to medical appointments, including  the one in which a biopsy was performed that confirmed a malignancy.

37.    After confirming the return of lymphoma in 2007, Wing Hodas made the decision to not undergo chemotherapy, having previously experienced a difficult course of chemotherapy and other treatment during his prior bout with lymphoma.

38.    Wing Hodas shared his decision to forego additional chemotherapy with Wayne and Kaye Austin.

39.    As Wing Hodas's condition worsened in the weeks and months prior to his death, he regularly turned to his friends, the Austins, for assistance and friendship.

**In Late 2007,Wing Hodas Informs Mr. Mehr That He Is Dying Of Cancer
And Wants To Change His Estate Plan To Designate The Austins
As Beneficiaries, Which He Has A Right To Do**

40.    In approximately October 2007, Wing Hodas confidentially informed Mr. Mehr and Evans & Luptak that he was dying of cancer and that his doctors said he had perhaps six months to live.

41.    At that time and at all relevant times thereafter, Evans & Luptak and Mr. Mehr knew that Wing Hodas had the capacity to discuss and make estate planning decisions and to execute estate planning documents on his own behalf.

42.    Wing Hodas expressly asked his attorneys to keep this information regarding his terminal illness confidential from members of his family.

43.    Wing Hodas also informed Mr. Mehr and Evans & Luptak at the time that he wanted to change his estate plan.

44.    Wing Hodas  informed Mr. Mehr and Evans & Luptak that he wanted to designate his friends Wayne and Kaye Austin as beneficiaries, rather than his only child Rachel, whom he knew stood to inherit a  large amount of money from his parents' estate plan as a result of his impending death.

45.    Wing Hodas expressly asked his attorneys to keep this information regarding his intended change in beneficiaries confidential from members of his family.

46.    Evans & Luptak and Mr. Mehr knew that a person has a right to leave  his estate to anyone he chooses, regardless of whether the designated  beneficiaries are blood relatives.

47.    Evans & Luptak and Mr. Mehr knew that Wing Hodas had a right to designate the Austins as beneficiaries of his estate and to transfer assets to them.

-6-

48.    Evans & Luptak and Mr. Mehr knew that Wing Hodas intended to designate the Austins as beneficiaries of his estate and to transfer assets to them.

**On His Own Initiative, Mr. Mehr Recommends Changes
To The Operating Agreement Of The Hodas LLC That Will
Reduce The Value Of Wing Hodas's Interest In The Business
At The Time Of His Impending Death**

49.    After being informed by Wing Hodas of his terminal condition and his intention to have the Austins rather than Rachel inherit his estate, Evans & Luptak and Mr. Mehr took steps that had the effect of sharply reducing the value of the single largest asset in Wing Hodas's estate – his 32-percent stake in the Hodas LLC – at the time of Wing's death.

50.    Specifically, less than a month after Wing Hodas had confidentially disclosed that he was dying and that he wanted to change his estate plan to make the Austins beneficiaries, Evans & Luptak and Mr. Mehr, on their own initiative, contacted Wing Hodas's father, Ernest Hodas, who was the manager of the Hodas LLC.

51.    The purpose of this contact was for Evans & Luptak and Mr. Mehr to recommend to the elder Hodas that a mandatory buy/sell provision be added to the operating agreement for the Hodas LLC, in which Wing Hodas's trust held a 32-percent interest.

52.    In making this recommendation to the elder Hodas, Evans & Luptak and Mr. Mehr relied on and utilized confidential information provided to the attorneys by Wing Hodas regarding his terminal illness and his intention to change his beneficiaries to the Austins, which would soon result in the Austins effectively holding a 32-percent interest in the Hodas LLC as beneficiaries of Wing Hodas's trust.

53.     More specifically, Mr. Mehr recommended that the operating agreement for the Hodas LLC be changed to include a mandatory buy/sell provision providing that in the event of death or incapacity of a member of the LLC (such as Wing Hodas, who Mr. Mehr knew would soon die), that the member's shares would be required to be sold to the Hodas LLC or its members at a discount.

54.     Prior to effectuating any of Wing Hodas's requested changes to his will and estate plan, Evans & Luptak and Mr. Mehr completed work on a new mandatory buy/sell provision for the Hodas LLC.

55.     The new mandatory buy/sell provision that Mr. Mehr had proposed on his own initiative and then completed at the direction of Ernest Hodas had the effect of reducing by 20 percent the value of Wing Hodas's stake in the Hodas LLC at the time of his death in June 2008.

56.     Evans & Luptak and Mr. Mehr represented all parties – including Ernest Hodas and Wing Hodas – with regard to the changes to the operating agreement for the Hodas LLC that added a new mandatory buy-sell provision at a 20-percent discount in the event of death or incapacity.

57.     Evans & Luptak and Mr. Mehr did not advise Wing Hodas or any other Hodas client that they had any conflict of interest with regard to the drafting and implementation of changes to the operating agreement for the Hodas LLC that added a new mandatory buy-sell provision at a 20-percent discount in the event of death or incapacity of a member.

58.     Evans & Luptak and Mr. Mehr initiated and completed the work with regard to the mandatory buy/sell provision to the operating agreement for the Hodas LLC after Wing Hodas had informed Mr. Mehr confidentially regarding his terminal illness and before completing the changes

to  Wing Hodas's will and estate plan that Wing Hodas had discussed with Mr. Mehr in October 2007.

59.    As a result of the buy/sell amendment changes to the Hodas LLC's operating agreement recommended and effectuated by Evans & Luptak and Mr. Mehr, the value of Wing Hodas's 32-percent interest in the Hodas LLC was reduced by 20 percent due to his death on June 11, 2008.

### Evans & Luptak Makes Wing Hodas's Requested Estate Plan Changes After Effectuating Changes To The Hodas LLC Operating Agreement, And Fails  To Research California Law In Doing So.

60.    After effectuating changes in the Hodas LLC's operating agreement that were initiated as a result of Wing Hodas having confidentially disclosed to his lawyers both his terminal illness and his intended change in beneficiaries,  Evans & Luptak and Mr. Mehr returned to Wing Hodas's  request that changes be made in his will before his nearing death.

61.    Wing Hodas first discussed with Mr. Mehr in October 2007 his terminal illness and the changes he wished to make to designate the Austins as his beneficiaries.

62.    Evans & Luptak and Mr. Mehr did not send to Wing Hodas the estate planning documents purporting to effectuate the change in beneficiaries he had requested until late April 2008, six months after  Mr. Mehr had disclosed his terminal illness to the firm that doctors had said would claim his life in six months.

63.     On or about April 28, 2008, Evans & Luptak and Mr. Mehr sent to Wing Hodas estate planning documents that purported to effectuate Wing Hodas's requested changes to his estate plan,  including the designation of the Austins as his beneficiaries.

64.     Prior to sending the documents to Wing Hodas on or about April 28, 2008, Evans & Luptak and Mr. Mehr failed to research or consider pertinent provisions of California law, including, but not limited to, aspects of California's Welfare and Institution Code and California's Probate Code.

65.     For example, Mr. Mehr was not aware, and failed to inform Wing Hodas, that the Austins might be deemed to be  "care custodians" under applicable California law.

66.     Mr. Mehr also was not aware, and failed to inform Wing Hodas, that a rebuttable presumption prohibiting the transfers of assets  intended by Wing Hodas  to the Austins would arise under applicable California law in the event that the Austins were deemed to be "care custodians."

67.     Mr. Mehr also was not aware, and failed to inform Wing Hodas, that a ready mechanism existed under California law to allow transfers such as those that Wing Hodas intended to make to  the Austins.

68.     Mr. Mehr also was not aware, and failed to inform Wing Hodas,  that a certificate of independent review could and should be  obtained in order to effectuate Wing Hodas's transfers to the Austins and  to demonstrate that the transfers that he intended to make to the Austins were not the product of undue influence.

69.     Mr. Mehr also was not aware, and did not inform  Wing Hodas,  that  the transfers to the Austins reflected in the documents that Evans & Luptak and he had prepared and delivered to Wing Hodas for signature would be presumptively disqualified in the event that  the Austins were deemed to be "care custodians" under California law.

70.     The documents sent by Evans & Luptak and Mr. Mehr to Wing Hodas in late April 2008 contained numerous other defects under applicable California law, including, but not limited to, errors that interfered with the transfer of real estate to the Austins.

71.     Evans & Lutpak and Mr. Mehr committed numerous other acts and omissions in the research and preparation of the estate planning and related documents sent to Wing Hodas for signature in late April 2008, including, but not limited to, acts and omissions that failed to demonstrate that Wing Hodas had the capacity to execute the documents.

**Wing Hodas Dies,**
**And The Austins Are Alleged To Be "Care Custodians"**
**Who Are  Presumptively Disqualified**
**From Receipt Of Any Transfers Under California Law**

72.     On June 11, 2008, Wing Hodas died.

73.     As a result of Wing Hodas's death, Mr. Mehr  became co-successor trustee of Wing Hodas's trust for which the Austins were designated as the beneficiaries, pursuant to the estate planning documents prepared by Evans & Luptak and Mr. Mehr on behalf of Wing Hodas.

74.     Upon information and belief, Mr. Mehr engaged in  numerous acts and omissions after Wing Hodas's death that conflicted with his duties as co-successor trustee of Wing Hodas's trust, including, but not limited to, assisting in a private investigation of the trust's beneficiaries – the Austins – by one or more other members of the Hodas family who were opposed to the Austins' status as beneficiaries of the trust.

75.     On or about September 10, 2008, the executor of Wing Hodas's estate, Robert Shaw, filed a petition to probate Wing Hodas's will in probate court in Siskiyou County, California.

76.     The petition sought to probate the will that Evans & Luptak had tendered to Wing Hodas for signature in late April 2008, which, among other things, purported to leave the residue of his estate to the Austins.

77.     Shortly after filing of the petition by the executor, Wing Hodas's daughter, Rachel Hodas, filed a will contest in the Siskiyou County probate court proceeding.

78.     In the will contest, Rachel Hodas alleged in part that the Austins were "care custodians" who were presumptively disqualified from receiving any donative transfers from Wing Hodas under applicable California law.

79.     Under California law, due to the absence of a certificate of independent review by an attorney with regard to Wing Hodas's estate plan changes made shortly before his death, a presumption of invalidity with regard to all transfers to the Austins would apply in the event that they were determined to have been "care custodians" through the will contest proceeding.

80.     Controlling California law in effect at the time that Evans & Luptak had prepared the estate planning changes for Wing Hodas held that long-time friends of a decedent who provided personal care to him were deemed to be "care custodians" under the applicable California statutory provisions.

81.     Under California law in effect at the time that Evans & Luptak had prepared the estate planning changes for Wing Hodas, "care custodians" could only overcome the presumption of invalidity with regard to donative transfers by a decedent through clear and convincing evidence that the decedent was not the subject of undue influence.   Under the applicable law, such evidence could not include testimony from the "care custodians" themselves.

82.     After Rachel Hodas initiated the will contest on or about September 24, 2008, expensive and vigorously contested litigation ensued.

83.     The will contest was ultimately settled in early January 2009.  In the settlement, the Austins were allowed to retain some assets transferred to them by Wing Hodas, but they did not receive the 32-percent interest in the Hodas LLC that Wing Hodas had intended to transfer to the Austins.   Instead, the 32-percent interest in the Hodas LLC was transferred to Rachel  Hodas, contrary to the express intentions communicated by Wing Hodas to Evans & Luptak and Mr. Mehr that had precipitated the changes made to Wing Hodas's estate plan prior to his death.

84.     Acts and omissions by Evans & Luptak and Mr. Mehr proximately and directly caused the Austins to lose millions of dollars that Wing Hodas had intended to transfer to them via his estate plan.

### Count I - Professional Malpractice

85.     Plaintiffs hereby incorporate by reference the preceding allegations.

86.     An attorney/client relationship existed between Evans & Luptak and Mr. Mehr, on the one hand,  and Wing Hodas, on the other hand.

87.     As beneficiaries named in the estate planning documents prepared by Evans & Luptak and Mr. Mehr on behalf of Wing Hodas, the Austins have standing to sue Evans & Luptak and Mr. Mehr for professional malpractice committed in the preparation of the estate planning documents.

88.     Evans & Luptak and Mr. Mehr  owed a duty to Wing Hodas, Wing Hodas's trust, and the Austins.

89.     Evans & Luptak negligently breached the duty owed to Wing Hodas and the Austins.

90.    The breach has caused the Austins significant harm, including, but not limited to, loss of millions of dollars from Wing Hodas's estate that Wing Hodas intended to transfer to the Austins.

91.    As a direct and proximate result of the malpractice, the Austins have suffered substantial economic and non-economic harm.

### Count II - Breach of Fiduciary Duty

92.    Plaintiffs hereby incorporate by reference the preceding allegations.

93.    At all relevant times, Evans & Luptak and Mr. Mehr owed a fiduciary duty to Wing Hodas, Wing Hodas's trust, and the Austins.

94.    Wing Hodas and the Austins reposed faith, confidence and trust in Evans & Luptak and Mr. Mehr with regard to preparation of estate planning documents and to service as co-successor trustee of Wing Hodas's trust.

95.    Evans & Luptak and Mr. Mehr breached their fiduciary duties to Wing Hodas, Wing Hodas's trust, and the Austins.

96.    The breach caused the Austins significant harm.

97.    As a direct and proximate result of the breach of fiduciary duty by Evans & Luptak and Mr. Mehr, the Austins have suffered substantial economic and non-economic harm.

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor, and against Defendants, for whatever damages Plaintiffs are found to be entitled to recover, including, but not limited to, damages for economic harm such as attorney's fees and loss of income, and non-economic harm such as mental anguish, as well as exemplary damages, and any other or further relief the Court deems just, plus interest, costs and attorney's fees.

-14-

THE GOOGASIAN FIRM, P.C.


By/s/Thomas H. Howlett
   George A. Googasian (P14185)
   Thomas H. Howlett (P57346)
   Dean M. Googasian (P53995)
Attorneys for Plaintiffs
6895 Telegraph Road
Bloomfield Hills, MI  48301-3138
248/540-3333
E-mail: thowlett@googasian.com
      dgoogasian@googasian.com

Dated: March 15, 2010

## JURY DEMAND

Plaintiffs Wayne Austin and Kaye Austin, by and through their attorneys, The Googasian

Firm, P.C., hereby demand a trial by jury in the above-entitled cause.

THE GOOGASIAN FIRM, P.C.


By /s/Thomas H. Howlett
    George A. Googasian (P14185)
    Thomas H. Howlett (P57346)
    Dean M. Googasian (P53995)
    Attorneys for Plaintiffs
    6895 Telegraph Road
    Bloomfield Hills, MI  48301-3138
    248/540-3333
E-mail: thowlett@googasian.com
           dgoogasian@googasian.com

Dated: March 15, 2010


## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.


/s/  Thomas H. Howlett
Attorneys for Plaintiff
6895 Telegraph Road
Bloomfield Hills, MI  48301-3138
248/540-3333
E-mail: thowlett@googasian.com